# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| Karen M. Ledesma, | 2:12-cv-01461-JCM-VCF |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, *Commissioner of Social Security,* | [Motion to Remand (#22)] |
| Defendant. | |

Before the Court is *Karen M. Ledesma v. Carolyn W. Colvin*, *Commissioner of Social Security*, case no. 2:12-cv-01461-JCM-VCF.

**BACKGROUND:**

This case arises under the Social Security Act, Title II. Karen Ledesma filed an application for a period of disability and disability insurance benefits on April 3, 2009 alleging disability beginning on March 20, 2009. (AR 142-143). Karen Ledesma was denied initially and upon reconsideration on June 29, 2009 and November 25, 2009, respectively. (AR 93-96, 98-100). Karen Ledesma filed her request for hearing on December 14, 2009. (AR 103-104). Administrative Law Judge Barry Jenkins (hereinafter "ALJ") conducted a hearing on February 22, 2011. (AR 40-90). On March 18, 2011, ALJ Jenkins issued an unfavorable determination find that Karen Ledesma retained the residual functional capacity (hereafter "RFC") to perform her past relevant work. (AR 20-39). Karen Ledesma timely filed her request for review with the Appeals Council on May 9, 2011. (AR 15). The Appeals Council denied the request for review on June 20, 2012. (AR 1-7). This timely civil action followed. The court has jurisdiction to review the final decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g); 1383(c).

On August 23, 2012, Ms. Ledesma filed her complaint against Carolyn W. Colvin, Acting Commissioner of Social Security, seeking judicial review of the final decision denying her claim for

benefits (#4).  Defendant Colvin filed an answer (#19) asking the court to affirm the decision of the ALJ.  Pursuant to the Order Concerning Review of Social Security Cases (#21), Ms. Ledesma filed her Motion for Remand and/or Reversal (#22).  Defendant Colvin filed an Opposition (#24) and Ms. Ledesma filed a Reply in Support of Her Motion for Remand and/or Reversal (#25).

Having reviewed these written arguments, the Social Security AR, and all other matters of record in this case, the undersigned judge respectfully submits the following Report and Recommendation.

**DISCUSSION**

I.   Issues Presented.

Although medical and testimonial evidence is referenced throughout Ms. Ledesma's motion (#22), she did not provide a separate summary of medical or testimonial evidence.  Defendant agrees that Ms. Ledesma's summary of the Commissioner's Findings is "generally accurate." (#24 at 3).  The Commissioner stipulates that the ALJ's decision fairly and accurately summarized the material medical and testimonial evidence, as permitted in this Court's Order Concerning Review of Social Security cases.  *Id.*

The transcript of the administrative hearing can be adequately comprehended. No page of the certified administrative record that substantially relates to the issues raised in this case is partially or totally unintelligible (or inaudible), although the medical evidence contains some handwriting that is difficult to decipher.

Ms. Ledesma maintains that the ALJ:  (1) failed to properly evaluate the medical evidence in assessing her RFC; (2) failed to properly evaluate her subjective complaints; and (3) erred in finding that she can perform her past relevant work or alternate work. (#22 at 3).

**II.   Standard of Review**

This court may set aside the Social Security Administration Commissioner's denial of disability benefits only when the findings of the ALJ are based on legal error or are not supported by substantial

evidence in the record as a whole.  Social Security Act, Sections 216(i), 223, 42 U.S.C. §§ 416(i) and 423; *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* The legal question here is whether the ALJ's final decision has the support of substantial evidence and is free of material legal error. In applying the substantial evidence test a court reviews the record as a whole and not merely at the evidence tending to support or contradict a finding. *Walker v. Mathews*, 546 F.2d 814, 818 fn 6. (9th Cir. 1976) citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487-88, 71 S. Ct. 456, 95 L. Ed. 456 (1951). Karen Ledesma contends that the ALJ's RFC assessment lacks the support of substantial evidence.

**III.     Analysis**

The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last not less than twelve months. *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996), quoting 42 U.S.C. § 423(d)(1)(A).

Social Security evaluates disability claims in a five step sequence. 20 C.F.R. §404.1520. The first step is to determine if the claimant is engaging in substantial gainful activity. If the claimant is performing substantial gainful activity, the claim is denied. If not performing substantial gainful activity, the second step is to determine if the claimant has a severe impairment, an impairment that significantly limits work activity abilities.  If there are no relevant severe impairments, the claim is denied. At step three it is determined if a claimant's impairments or combination of impairments meets or medically equals criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At Step four, whether the claimant has the residual functional capacity to perform past relevant work is considered. If unable to perform past

relevant work, the analysis proceeds to step five to determine whether the claimant is theoretically able to perform any work.

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520 (AR 25-34). Ms. Ledesma had not engaged in substantial gainful activity since March 20, 2009, her alleged onset date (step one) (AR 25). Ms. Ledesma had rheumatoid arthritis and systemic lupus erythematosus, which were severe impairments (step two), but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings) (step three) (AR 25-27). The ALJ determined that Ms. Ledesma had the residual functional capacity (RFC) to lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours, cumulatively, in an eight hour work day; and stand and walk for two hours, cumulatively, in an eight hour work day (AR 27). The ALJ determined that Ms. Ledesma could perform her past relevant work as a retail clerk, convenience store clerk, waitress, and embroidery machine operator, and was therefore not disabled (step four) (AR 32-33).

As an alternative finding, the ALJ found that Ms. Ledesma could perform a significant number of other jobs in the national economy (step five) (AR 33-34). Accordingly, the ALJ concluded that Ms. Ledesma was not disabled (AR 34). In reaching his conclusions, the ALJ also determined that Ms. Ledesma's subjective complaints were not fully credible (AR 26, 28, 30-31).

**A.      Substantial evidence supported the ALJ's RFC finding that Ms. Ledesma could perform a range of light work.**

Substantial evidence supported the ALJ's RFC assessment that Ms. Ledesma was capable of a range of light work. See *Richardson*, 402 U.S. at 401; *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). The

Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

In reaching his RFC finding, the ALJ carefully considered all of the evidence in the record (AR 23, 25, 27, 31). It is the ALJ's role to interpret the medical evidence and resolve any conflicts or ambiguities, which he properly did here. To the extent there is any ambiguity in the evidence, the ALJ's interpretation controls. See *Tommasetti*, 533 F.3d at 1041 ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"); *Magallanes*, 881 F.2d at 750 ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). In this case, the ALJ noted that Ms. Ledesma had been diagnosed with lupus in 1999 and prescription medications controlled her lupus (AR 27, 275, 472, 494-542, 662-72). Although Ms. Ledesma claimed several impairments including diabetes, rheumatoid arthritis, fibromyalgia, back and leg pain, and hypertension, the ALJ found that treatment controlled all of these (AR 27-28, 472). Upon physical examination, Ms. Ledesma evinced largely normal physical findings (AR 30, 472-78). The ALJ noted that MRIs of the lumbar, cervical, and thoracic spine from August 2010 revealed mild facet arthropathy at L4-5 and L5-S1, mild degenerative changes, and some isolated bulging (AR 29-30, 745-47). Treating records did not indicate functional limitations related to lupus or rheumatoid arthritis but did indicate some muscle spasms at the trapezius and lumbar regions and tenderness at the right hip, although no degenerative joint changes (AR 31, 496, 664). The ALJ concluded that his RFC assessment accommodated these symptoms and was supported by the record (AR 31).

The ALJ's findings are not contrary to the objective medical findings in the record.  To the extent the ALJ decision varied from the opinions of the consultative examiner, Khossrow Hakimpour, M.D. and the state agency physician, Albert Peterman, M.D., the variance was in Ms. Ledesma's favor. Both doctors assessed far fewer limitations than contained in the ALJ's RFC finding.  Dr. Hakimpour found, and Dr. Peterman affirmed, that Ms. Ledesma had no physical limitations except regarding

postural activities, all of which she could do frequently (AR 472-78, 481). The ALJ did not reject either opinion, however, but gave both some weight (AR 30-31). Nonetheless, the ALJ concluded that given Ms. Ledesma's allegations regarding the combination of her impairments and more recent medical evidence, an RFC for a limited range of light work more appropriately accommodated Ms. Ledesma's symptoms. It is the ALJ's responsibility to assess a claimant's RFC and in doing so he is not required to adopt any particular medical opinion. See 20 C.F.R. § 404.1546(c).

The ALJ's decision not to re-contact Ms. Ledesma's treating physician was not error.  The ALJ is only required to re-contact medical sources when the evidence is "inadequate for [the ALJ] to determine if [the claimant is] disabled . . . ." 20 C.F.R. § 404.1512(e); see *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"), citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ found that the evidence in the record clearly supported a finding that Ms. Ledesma was not disabled (AR 31), and Ms. Ledesma cites to no authority that equates a lack of treating physician opinion with inadequacy. Moreover, given that Drs. Hakimpour and Peterman assessed very few limitations, substantial evidence supported a less restrictive finding than the ALJ made. Similarly, while Ms. Ledesma contends that the ALJ should have used a medical expert because there was additional medical evidence in the record, the authority she cites to for this proposition is not on point as there is no issue of medical equivalence in this case (Ms. Ledesma's Motion for Reversal at 6). The consultative examination, which Ms. Ledesma did undergo, also serves to develop the record. See 20 C.F.R. § 404.1512(f). Ms. Ledesma fails to show any inadequacy in the record.

Substantial evidence supports the ALJ's decision that Ms. Ledesma could perform a range of light work, which must therefore be upheld. *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1071 (9th

1  Cir. 2010) ("We must uphold an ALJ's decision so long as it is supported by substantial evidence and is
2  not based on legal error").

3         **B.     Ms. Ledesma's Other Contentions of Error Do Not Support Reversal or Remand**

4         The record before this court establishes that the ALJ properly evaluated the medical evidence in
5  assessing Ms. Ledesma's RFC, and properly evaluated her subjective complaints. There were a number
6  of inconsistencies in the record regarding Ms. Ledesma's level of pain and ability to function throughout
7  the day. (AR 26, 28, 62, 289-96, 323-327 625) See *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.
8  2012) ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony
9  and the claimant's conduct"). The relatively benign objective medical evidence contradicted Ms.
10 Ledesma's claims of disabling pain. The court will not disturb reasonable inferences drawn by the ALJ
11 in this regard. See *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. §
12 404.1529(c)(2) (addressing objective evidence in the context of credibility analysis)); see also 20 C.F.R.
13 § 404.1529(b) (medical evidence must reasonably support subjective claims).

14         Ms. Ledesma's contention that the ALJ could not rely on her daily activities to discount her
15 credibility is incorrect (Ms. Ledesma's Motion for Reversal at 9). See *Molina*, 674 F.3d at 1112 (an ALJ
16 may consider "whether the claimant engages in daily activities inconsistent with the alleged
17 symptoms"). First, in this case, the ALJ articulated how Ms. Ledesma's daily activities were
18 transferable to a work setting (AR 28). See *Fair*, 885 F.2d at 603 ("if, despite his claims of pain, a
19 claimant is able to perform household chores and other activities that involve many of the same physical
20 tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's
21 pain does not prevent the claimant from working"). Second, the Ninth Circuit clearly directs that an ALJ
22 may rely on a claimant's activities of daily living in assessing credibility, not only if the activities are
23 directly applicable to work, but also when they are inconsistent with the claimant's subjective
24 allegations of disability. See *Molina*, 674 F.3d at 1112-13 ("While a claimant need not 'vegetate in a
25

dark room' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"), citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) and *Valentine v. Astrue*, 574 F.3d 685, 693 (9th Cir. 2009) (court approved ALJ's finding that claimant's "non-work activities . . . are inconsistent with the degree of impairment he alleges"). Under either standard for considering daily activities, substantial evidence supports the ALJ's finding.

The ALJ's credibility findings are entitled to deference and, the ALJ's finding is supported by substantial evidence. See *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (questions of credibility and resolution of conflicts in the testimony are functions solely for the agency). Ms. Ledesma fails to reveal any reversible error in the ALJ's credibility finding.

**C.    Substantial Evidence Supported the ALJ's Finding that Ms. Ledesma Could Perform Her Past Relevant Work, or in the Alternative, Could Perform a Significant Number of Jobs in the National Economy.**

Substantial evidence supports the ALJ's finding that Ms. Ledesma could do her past relevant work as an embroidery machine operator (AR 32-33). Ms. Ledesma described her work as an embroidery machine operator as embroidering labels on clothing using a sewing machine (AR 52-53). She testified that the job required "a week or two" of training and essentially entailed ensuring that the machine was working (AR 53). This description of work is consistent with the ALJ's RFC assessment and therefore supports the ALJ's finding that she could return to that work.    See *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (the claimant's own description of her past work duties was "highly probative" and supported the ALJ's finding that she could return to that work). Although Ms. Ledesma argues that the ALJ improperly relied on vocational expert testimony in making this finding (Ms.

1 Ledesma's Motion for Reversal at 11), vocational expert testimony is not required at step four. See

2 *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (vocational expert not required if claimant can

3 perform past work); *Matthews*, 10 F.3d at 681 (vocational expert testimony was "useful, but not

4 required" when the claimant failed to show he could not return to his previous job). Rather, it is Ms.

5 Ledesma's burden to show that she could not return to her past relevant work, which she has failed to

6 do. See 20 C.F.R. §§ 404.1520(f), 404.1560(b)(2); *Matthews*, 10 F.3d at 681.

7 The ALJ also made an alternate finding at step five that given Ms. Ledesma's age, education,

8 work experience, and RFC, Ms. Ledesma could perform a significant number of jobs in the national

9 economy (AR 33-34). Even if the ALJ erred in relying on vocational expert testimony that there are

10 approximately 6,000 jobs at the light exertional level, harmless error applies here. See *Molina*, 674 F.3d

11 at 1111 ("we may not reverse an ALJ's decision on account of an error that is harmless"); *Burch*, 400

12 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless").

13 Although being limited to two hours of standing and walking would reduce the number of light

14 jobs available, it would not completely erode the occupational base.  Social Security regulations define

15 light work as a job that "requires a good deal of walking or standing, or when it involves sitting most of

16 the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (emphasis

17 added); see also SSR 83-10 ("[a] job is also in this the light] category when it involves sitting most of

18 the time but with some pushing and pulling of arm-hand or leg-foot controls").

19 Even with a limitation to two hours of standing and walking, Ms. Ledesma's RFC is well beyond

20 sedentary. If Ms. Ledesma's exertional capacity falls between sedentary and light, and she is not

21 disabled under either range, as is the case here, the ALJ can use the Medical-Vocational Guidelines to

22 find Ms. Ledesma was not disabled. See SSR 83-12 (when a claimant's exertional limitations fall

23 between two ranges of work, and the claimant would be not disabled under either range, then the ALJ

24 can use the Grids to find the claimant not disabled). Furthermore, as the ALJ noted, based on his RFC

25

assessment Ms. Ledesma could still do the full range of sedentary work (AR 34). See 20 C.F.R. §404.1567(a). The Medical-Vocational Guidelines direct that a person of Ms. Ledesma's age, education, and work experience who can do the full range of sedentary work is not disabled. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.27. It is not enough for Ms. Ledesma to point out error, she has the burden to prove that the error was harmful. See *Molina*, 674 F.3d at 1111 ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination'") (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Ms. Ledesma has failed to show that the ALJ's step five error was not harmless.

## RECOMMENDATION

Because substantial evidence supports the ALJ's decision and the record does not support a finding of legal error, it is the recommendation of the undersigned United States Magistrate Judge that Ms. Ledesma's Motion to Remand (#22) be DENIED .

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 22th day of August, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE